IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DANIEL LYNN ESTES, | ) |
| | ) |
| Claimant, | ) No. 14-cv-3377 |
| | ) |
| v. | ) Jeffrey T. Gilbert |
| | ) Magistrate Judge |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Respondent. | ) |

## MEMORANDUM OPINION AND ORDER

Claimant Daniel Lynn Estes ("Claimant") seeks review of the final decision of Respondent Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner"), denying Claimant's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. [ECF No. 8.]

Pursuant to Federal Rule of Civil Procedure 56, the parties have filed cross-motions for summary judgment. [ECF Nos. 17, 24.] For the reasons stated below, Claimant's motion for summary judgment is granted and the Commissioner's motion is denied. The decision of the Commissioner is reversed, and the case is remanded to the Social Security Administration ("the SSA") for further proceedings consistent with this Memorandum Opinion and Order.

# I. PROCEDURAL HISTORY

On September 29, 2011, Claimant filed an application for DIB,[1] alleging a disability onset date of November 4, 2010. (R. 148-154.) After an initial denial and a denial on reconsideration, Claimant filed a request for an administrative hearing. (R. 94, 101, 107-108.) Claimant, represented by counsel, appeared and testified before the Administrative Law Judge ("the ALJ") on March 27, 2013. (R. 54-78.) A vocational expert (the "VE") also testified. *Id.*

On April 8, 2013, the ALJ issued a written decision denying Claimant's application for DIB based on a finding that he was not disabled under the Social Security Act. (R. 38-48.) The ALJ first noted that Claimant met the insured status requirements of the Social Security Act through December 31, 2015. (R. 40.) The opinion then followed the five-step sequential evaluation process required by Social Security Regulations. 20 C.F.R. § 404.1520. At step one, the ALJ found Claimant had not engaged in substantial gainful activity since his alleged onset date of November 4, 2010. (R. 40.) At step two, the ALJ found Claimant had the severe impairments of status post fusion at L4-L5 and obesity. *Id.* At step three, the ALJ found Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925 and 416.926). *Id.*

Before step four, the ALJ found Claimant had the residual functional capacity ("RFC") to perform light work, except that he could not climb ladders, ropes, or scaffolding and could only occasionally balance, stoop, kneel, crouch, crawl, or climb ramps or stairs. (R. 41.) Based on this RFC, the ALJ determined at step four that Claimant could not perform any past relevant work. (R. 46.) At step five, though, the ALJ found there were jobs existing in significant

---

[1] Claimant filed a concurrent application for Supplemental Security Income ("SSI"), which was denied. Claimant's SSI application is not at issue in this appeal.

numbers in the national economy that Claimant could perform, including housekeeper/cleaner, cafeteria attendant, and packager. (R. 47.) Because of this determination, the ALJ found that Claimant was not disabled under the Social Security Act. (R. 47.) The Social Security Appeals Council subsequently denied Claimant's request for review. (R. 1-4).

## II. STANDARD OF REVIEW

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000). Under such circumstances, the district court reviews the decision of the ALJ. *Id.* Judicial review is limited to determining whether the decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching her decision. *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even when there is adequate evidence in the record to support the decision, however, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). If the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

The "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). It may

3

not, however, "displace the ALJ's judgment by reconsidering facts or evidence . . . ." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Thus, judicial review is limited to determining whether the ALT applied the correct legal standards and whether there is substantial evidence to support the findings. *Nelms*, 553 F.3d at 1097. The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

## III. ANALYSIS

Claimant asserts that the ALJ made two errors. First, Claimant argues the ALJ failed to properly evaluate and weigh the opinions of his treating physicians, Dr. Ricca and Dr. Bajaj. Second, Claimant contends the ALJ's credibility analysis was improper. The Court finds the ALJ committed the first error, and, thus, need not address the second.

### A. The ALJ's Decision To Reject The Treating Physicians' Opinions Is Not Supported By Substantial Evidence.

Social Security regulations direct an ALJ to evaluate each medical opinion in the record. 20 C.F.R. § 404.1527(c). The opinion of a claimant's treating physician is entitled to controlling weight as long as it is supported by medical findings and is not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2); *Loveless v. Colvin*, 810 F.3d 502, 507 (7th Cir. 2016); *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000). When an ALJ decides not to give controlling weight to a claimant's treating physician, the ALJ must provide a sound explanation for doing so. *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011). Even when an ALJ provides good reasons for not giving controlling weight, he still must determine and articulate what weight, if any, to give the opinion. *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011). For this determination, the regulations mandate consideration of such factors as the length, nature, and extent of any treatment relationship; the frequency of examination; the

4

physician's specialty; the types of tests performed; and the consistency of the physician's opinion with the record as a whole. 20 C.F.R. § 404.1527(c); *Yurt v. Colvin*, 758 F.3d 850, 860 (7th Cir. 2014); *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009). In general, the opinions of physicians who have examined the patient merit more weight than the opinions of physicians who have only reviewed a claimant's medical records or files. *See Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003).

In this case, the ALJ had the benefit of opinion of evidence from six different doctors. Two of these doctors, Drs. Prempreet Singh Bajaj and Glen L. Ricca, were treating physicians. Dr. Ricca has been Claimant's primary care physician since at least 2006. (R. 1198.) He is familiar with Claimant's history, including his L4-S1 spinal fusion surgery performed in 2008. (R. 1218.) Dr. Ricca's treatment notes from November 5, 2010, indicate Claimant reported to the emergency room the day before after experiencing an "acute worsening" of his chronic low back pain due to exertion at work. (R. 1355.) Dr. Ricca continued to treat Claimant's pain with medications, and he followed up with Claimant about monthly throughout 2011. (R. 489-90, 1326-1355.) On September 2, 2011, Dr. Ricca opined that Claimant had been able to return to work since February 28, 2011, but with the following restrictions: no lifting in excess of ten pounds, and no repetitive twisting, turning, bending, climbing, squatting, kneeling, pushing, or pulling.

Concurrently, Claimant received care from two spine specialist -- an orthopedic spinal surgeon, Dr. Alexander Ghanayem, and a rehabilitative spine specialist, Dr. Bajaj. After a January 2011 MRI scan, Dr. Ghanayem determined Claimant had facet joint arthritis immediately above the level of his fusion, which he thought might be related to the earlier surgery. (R. 325.) Dr. Ghanayem referred him to Dr. Bajaj, who evaluated Claimant and

5

planned a course of medial branch nerve blocks to determine the source of his pain. (R. 318-322.) Two nerve blocks provided temporary relief, leading Dr. Bajaj to recommend a radiofrequency ablation of the lumbar facet joints. (R. 301.) In a letter dated February 28, 2011, Dr. Bajaj stated that he had examined Claimant that day and opined that Claimant could return to work with the following restrictions: no lifting over ten pounds; no repetitive twisting, turning, bending, climbing, squatting, kneeling, pushing, or pulling; ability to change positions as needed due to pain. (R. 1183.) Claimant had additional follow-up appointments in April and May of 2011 (R. 301-313). On May 3, Dr. Bajaj wrote another letter, again stating that he had examined Claimant that day and opining that Claimant could return to work with the same ten-pound lifting restriction and the same postural restrictions as described in the February letter. (R. 1181.)

The record contains one consultative examiner's report. (R. 342-346.) A board certified orthopedic spinal surgeon, Dr. Babak Lami, examined Claimant on May 13, 2011. Dr. Lami prepared a report based on that exam and on a review of a record which consisted of the following: five treatment notes from 2010 and 2011, films from the January 2011 MRI, and "a series of treatment notes from 2004, 2006, 2007, 2008, and 2009." *Id.* Dr. Lami recounted the history of Claimant's back pain and reported that Claimant had received facet injections, which helped to some degree, and medications. (R. 344.) At the time of his exam by Dr. Lami in May, 2011, Claimant was taking naproxen and other anti-inflammatories as needed. (R. 343.) Based on an examination of Claimant and a review of his records, Dr. Lami opined that Claimant's increase in pain in November, 2010, was "essentially a continuation of previous back problems," though a recent MRI demonstrated "slight degenerative changes at L3-L4 which can occur with fusion and might be a contributing factor." (R. 344.) Dr. Lami opined that Claimant had

6

reached maximum medical improvement. *Id.* Advising against any additional injections, Dr. Lami recommended that Claimant "continue a home exercise program and occasional medications for his periodic episodes." *Id.* Dr. Lami also opined that Claimant was capable of returning to work with permanent restrictions of not lifting more than 30 pounds and no repetitive bending or twisting. (R. 345.)

In addition to the opinions of the treating physicians and Dr. Lami, the record contains opinions from three agency reviewing consultants. On November 29, 2011, medical consultant Dr. Richard X. Smith reviewed portions of Claimant's file, including Dr. Lami's report, and then prepared a Physical RFC Assessment. (R. 475-476.) Dr. Smith opined that Claimant retained the ability to lift twenty pounds occasionally and ten pounds frequently, to stand or walk for about six hours in an eight-hour workday and to sit for about eight hours in an eight-hour workday. (R. 470-471.) Dr. Smith also found: Claimant could never climb ladders, ropes, or scaffolds, and only occasionally climb, balance, stoop, kneel, crouch, or crawl. Because Dr. Smith denied seeing any medical source conclusions differing significantly from his own findings, it appears he did not have access to the opinions of Dr. Ricca and Dr. Bajaj, which were more limiting. (R. 475.) On March 5, 2012, a state agency consultant, Dr. Sandra Bilinsky, reviewed Claimant's file and affirmed the RFC assessment of Dr. Smith. (R. 500.) On June 4, 2012, another state agency reviewer, Dr. Craig Billinghurst, also reviewed Claimant's file and agreed with the RFC assessments of the previous reviewers. (R. 502-503.)

The ALJ's decision summarized the opinions of Claimant's treating physicians Dr. Ricca and Dr. Bajaj but did not assign them controlling weight, instead giving "great weight" to the opinions of the agency physicians Dr. Smith, Dr. Bilinsky, and Dr. Billinghurst. (R. 45.) The

ALJ summarized Dr. Lami's opinions but did not articulate what weight, if any, they were afforded. (R. 43.)

The ALJ provided three reasons for not assigning controlling or "great" weight to the opinions of Claimant's treating doctors. First, she pointed out that Claimant's work as performed until November, 2010, involved "far greater activities" than allowed under the ten-pound weight restriction indicated by the treating physicians, and that, despite the increase in pain, he was able to perform them. (R. 45.) However, just as "the fact that a person holds down a job doesn't prove that he isn't disabled," the fact that a person performs medium-exertion work for some period of time, against his doctors' recommendations, does not mean he is capable of sustaining that effort. *Henderson v. Barnhart*, 349 F.3d 434, 435 (7th Cir. 2003). The Seventh Circuit has recognized that a claimant will sometimes "be working beyond his capacity out of desperation." *Id.; see also Gentle v. Barnhart*, 430 F.3d 865, 867 (7th Cir. 2005).

Here, Claimant returned to work after his 2008 surgery with a 35 to 40 pound weight restriction. (R. 1048, 1066.) He testified that his employer eventually told him that he would lose his job unless he did heavier work, so he kept working out of fear he would be unable to find another job due to his age, back surgery, and limited education. (R. 63-64.) Claimant reported worsening pain in April and May of 2010, and used his time off to work only part-time. (R. 1361, 1364.) On November 4, 2010, Claimant lifted a hundred motors from a pallet to a bench, while assembling motor parts weighing between 25 and 40 pounds, which caused such severe pain and numbness that he went to the emergency room. (R. 377, 1355.) Claimant saw Dr. Ricca the next day. (R. 1355.) The fact that Claimant endured physical work in 2010 rather than face the prospect of unemployment does not demonstrate that he was medically capable of performing that work long term. *See Czarnecki v. Colvin*, 595 F. App'x 635, 644 (7th Cir.

2015) (claimant's work efforts were not inconsistent with disability, particularly where the claimant had to stop working due to pain).

Second, the ALJ attempts to minimize the treatment relationship that Claimant had with his physicians, noting that he saw Dr. Bajaj for only about five months, and that Dr. Ricca "generally just prescribed medication." Approximately two months after the acute worsening of Claimant's condition, Dr. Bajaj, a specialist in spinal rehabilitation, assessed Claimant on referral from his long-time orthopedic surgeon, Dr. Ghanayem. Over a period of four months, Dr. Bajaj performed two rounds of medial branch nerve blocks to determine the source of Claimant's pain and followed up to track the location and duration of any improvements. (R. 301-315.) This treatment history left Dr. Bajaj familiar with Claimant's longitudinal history and his failure to make progress. It makes little sense, and contravenes Social Security Regulations, to discount the opinion of a doctor who saw Claimant for "only" five months solely to favor doctors who never met him at all. *See Gudgel*, 345 F.3d at 470. Furthermore, given that Claimant was under the care of two spine specialists, it does not seem unusual that his long-time family physician, Dr. Ricca, would "just" prescribe medication for his back condition.

The ALJ's final reason for discounting the treating physicians is that a "functional capacity evaluation also showed greater abilities, with a limitation on lifting no more than 30 pounds." (R. 45.) To support this contention, the ALJ cites the opinion of Dr. Lami, who gave the thirty-pound restriction as an expression of professional opinion based on a standard physical exam and review of Claimant's medical record.[2] But the ALJ never indicated what weight, if

---

[2] The standard physical exam performed by Dr. Lami was not a Functional Capacity Evaluation ("FCE") as that term is usually defined. An FCE is a more-detailed series of functional tests, typically performed by a physical or occupational therapist over a period of four to six hours, intended to ascertain an individual's ability to perform specific job-related tasks. *See* http://www.aota.org/about-occupational-therapy/professionals/wi/capacity-eval.aspx (last visited March 30, 2016). Claimant did undergo an FCE on December 5, 2008, before returning to work after his surgery. (R. 856-866.) The ALJ mentioned that

9

any, she assigned to the opinion of Dr. Lami, in contravention of Social Security Regulations. *See* 20 C.F.R. 404.1527(c) (the Administration "will evaluate every medical opinion we receive."). In the absence of any such analysis, the ALJ failed to demonstrate that substantial evidence supports her conclusions.

While minimizing the opinions of the treating physicians and failing to assess the opinion of consultative examiner, the ALJ gave "great weight" to the opinions of the state agency physicians Dr. Smith, Dr. Bilinsky, and Dr. Billinghurst, finding them "consistent with evidence of record." (R. 45.) The only specific evidence cited in support of this statement is the following: "the claimant does not need to use a cane, as it is not prescribed by a doctor and is not consistent with examination findings." *Id.* The ALJ's reliance on cane use as a point of inconsistency in the opinions is inapposite. In fact, no doctor opined that Claimant needs a cane to ambulate, and Claimant himself acknowledges he used it chiefly to take some pressure off of his back, and to help himself get off of the couch or out of bed. (R. 64, 265.) Instead, the key distinctions between the capacity restrictions in the various doctors' opinions are what weight Claimant can safely lift—whether ten, twenty, or thirty pounds—and whether Claimant should be subject to additional restrictions on twisting, turning, and bending.

In focusing on issues of cane use and gait, the ALJ failed to articulate why she chose the reviewing physicians' views about Claimant's exertional and postural abilities over the corresponding views of Claimant's treating physicians. Therefore, the logical bridge between the record evidence and the ALJ's conclusions is missing. *See Roddy v. Astrue*, 705 F.3d 641 (7th Cir. 2013). The ALJ has not provided the requisite "sound explanation" for not giving controlling weight to the opinions of Dr. Ricca and Dr. Bajaj. *Punzio*, 630 F.3d at 710. This is

---

FCE in connection with her credibility assessment, but not in connection with her weighing of medical opinions. (R. 44-45.)

10

particularly true in light of the Seventh Circuit's admonishment that a contradictory opinion of a nonexamining physician may not, by itself, be sufficient grounds for rejecting a treating physician's opinion. *Gudgel*, 345 F.3d at 470.

Finally, the Court notes that the Commissioner devoted less than a page of her brief [ECF No. 25] to responding to Claimant's argument that the ALJ failed to evaluate and weigh properly the opinions of Claimant's treating physicians. The Commissioner's argument, wholly conclusory in nature, is that the ALJ "reasonably evaluated the physician opinions." *Id.* at p. 6. For the reasons discussed above, the Court concludes that the ALJ did not cite substantial evidence to support her conclusions and failed to build a logical bridge to her conclusions from the record evidence. Because the Commissioner never addressed Claimant's substantive arguments as to whether the ALJ's opinion is supported by substantial evidence, she essentially waived any argument that she might have made in that respect. *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) (undeveloped arguments waived).

**B.     On Remand, the ALJ Should Re-evaluate Claimant's Subjective Statements.**

This case requires remand to correct the above-discussed errors in the evaluation of opinion evidence. However, on remand, the ALJ should also take the opportunity to re-evaluate the intensity and persistence of Claimant's symptoms in light of the Administration's recent Policy Interpretation Ruling regarding the evaluation of symptoms in disability claims. *See* SSR 16-3p, 2016 WL 1119029 (effective March 28, 2016). The new ruling eliminates the term "credibility" from the Administration's sub-regulatory policies to "clarify that subjective symptom evaluation is not an examination of the individual's character." *Id.* at *1.

Here, the ALJ gave several reasons for disbelieving Claimant's statements about the intensity and persistence of his symptoms. One reason that the ALJ appeared to weigh heavily is

11

Claimant's gap in treatment during 2012. Both SSR 16-3p and the Administration's prior policies note that the failure to pursue treatment for a condition can suggest that symptoms may not be severe. *See* SSR 16-3p, 2016 WL 1119029, at *8-9; SSR 96-7p, at *7-8. However, those rulings also direct the ALJ not to draw such a conclusion without first considering any alternate explanations. *Compare* SSR 96-7p (ALJ must not draw a negative inference about symptoms from a failure to seek treatment "without first considering any explanations [for] infrequent or irregular medical visits or failure to seek medical treatment") *with* SSR 16-3p (instructing ALJs to consider "possible reasons [a claimant] may not comply with treatment or seek treatment consistent with the degree of his or her complaints."). Among the factors that might explain a gap in treatment are an inability to afford medical care, a "plateau" in the claimant's symptoms, or medical advice that "there is no further effective treatment to prescribe or recommend that would benefit the individual." SSR 16-3p.

Here, Claimant's treatments for his back symptoms over the years have included multiple series of injections into his spine, several courses of physical therapy, oral medications (steroidal, non-steroidal, and narcotic), and one major surgery. In 2011, Dr. Lami opined that Claimant had reached maximum medical improvement. (R. 344.) Dr. Bajaj recommended radiofrequency ablation, but Worker's Compensation did not approve the procedure. (R. 301, 1380.) Dr. Lami specifically advised against additional injections or surgery. (R. 344.) Physical therapy had been discontinued because of lack of improvement, despite Claimant's compliance with the exercises, both at home and in the 41 physical therapy sessions he attended over a seven-month period. (R. 422.) Claimant testified that he lost his medical insurance six months after he stopped working. (R. 65.) He continued taking various medications. (R. 65, 1380.) Under the circumstances, it is unclear what additional treatment Claimant might have sought in 2012, or

whether he had the ability to pay for it. On remand, the ALJ should consider the relevant factors listed in SSR 16-3p before relying on Claimant's gap in treatment to discount his own reports about his subjective symptoms.

## IV. CONCLUSION

For the reasons stated above, Claimant's motion for summary judgment is granted. The decision of the Commissioner is reversed, and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: April 11, 2016